~~BLUME, FORTE, FRIED, ZERRES & MOLINARI, P.C.~~
~~One Main Street~~
~~Chatham, New Jersey 07928 (973)~~
~~635-5400~~
~~Michael B. Zerres, Esq. (010351988) Richard~~
~~T. Madurski, Esq. (319962021) Attorneys for~~
~~Plaintiff~~

**JAVERBAUM WURGAFT HICKS KAHN**
**WIKSTROM & SININS, P.C.**
**505 Morris Avenue, Suite 200**
**Springfield, NJ, 07081**
**Telephone:  (973) 379-4200**
**Eric G. Kahn, Esq.**
**(021031993)**
**Attorneys for Plaintiff, N.S.**

| | |
|---|---|
| N.S.,<br><br>Plaintiff,<br><br>vs.<br><br>~~STEVAN HARNAD, THE TRUSTEES OF PRINCETON UNIVERSITY, JOHN DOE 1-5 (a series of fictitious names representing yet unidentified school safety personnel, campus safety department employees, proctors, police and administrators, and faculty who witnessed STEVAN HARNAD's crimes of a sexual nature and/or sexual abuse of plaintiff while on the PRINCETON UNIVERSITY campus, or, w), JAMES ROE 1-5 (a series of fictitious names representing yet unidentified school personnel and employees who had a supervisory or oversight role over defendant Harnad, and who failed to take necessary precautions to prevent such crimes and/or abuse of the then minor plaintiff), and, ABC ENTITY 1-5 (a class of fictitiously named Defendants representing yet unknown entities who provided safety, police and protections services at PRINCETON UNIVERSITY)~~<br>TRUSTEES OF PRINCETON d/b/a PRINCETON UNIVERSITY; STEVAN HARNAD; DEFENDANT DOE 1-10; DEFENDANT DOE INSTITUTION 1-10,<br><br>Defendant(s) | **UNITED STATES DISTRICT COURT**<br>**FOR THE DISTRICT OF NEW JERSEY**<br>DOCKET NO.:<br>3:21-cv-19820-(GC)(LHG)<br><br>Civil Action<br><br><br><br>**SECOND AMENDED COMPLAINT** |

~~Plaintiff, N.S., currently residing in Los Angeles, California by way of Complaint says:~~

## SECOND AMENDED COMPLAINT

Plaintiff, N.S., currently residing in Los Angeles, California by way of Second Amended Complaint says against the Defendants, Trustees of Princeton d/b/a Princeton University (hereinafter also referred to as "Princeton University" and/or "Princeton" and/or the "University"), Stevan Harnad (hereinafter also referred to as "Harnad" and/or "Defendant"), Defendant Doe 1-10, and Defendant Doe Institution 1-10, says as follows:

### ~~JURISDICTION AND VENUE~~

~~1.   Plaintiff, N.S., is a citizen of California.~~

~~2.   Defendants are citizens of Quebec, Canada and New Jersey, respectively.~~

~~3.   The amount in controversy, without interests and costs, exceeds $75,000.~~

~~4.   This action was originally filed in the Superior Court of New Jersey, Mercer County, but was removed to the United States District Court, District of New Jersey, by Defendant pursuant to 28 U.S.C. §§ 1332 and 1441 et seq. on or about November 8, 2021.~~

~~5.   Venue in this District is proper pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.~~

### JURISDICTION

1.      Plaintiff commenced this action in the Superior Court of New Jersey, Law Division, Mercer County, Docket No. MER-L-2213-21, on October 26, 2021.

2.      On November 8, 2021, Defendant, Trustees of Princeton d/b/a Princeton University filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332 and 1441 *et seq*.

## PARTIES

3.     Plaintiff, N.S. is a resident of Los Angeles, California.

1.     Defendant, Trustees of Princeton University, which owned, managed, administered and operated Princeton University during all relevant time periods, has a primary place of business at 1 Nassau Hall, Princeton, New Jersey 08544.

1.     Defendant, Stevan Harnad, resides at 1100, Docteur-Penfield Avenue, #1512, Montreal, Quebec, Canada, H3A 1A8.

4.     At the time of her sexual abuse, Plaintiff, N.S., was a minor under the age of 18 years, and at relevant times was an invitee at Princeton University in Princeton, New Jersey.

5.     At all times material hereto, Defendant, Trustees of Princeton, is a nonprofit corporation organized and existing under the laws of the State of New Jersey. Princeton University was and is a private educational institution with a principal place of business located in Princeton, New Jersey.

6.     At all times material hereto, Defendant, Stevan Harnad, was a professor, teacher, graduate student, graduate teaching assistant, graduate research assistant, psychology doctoral student, employee and/or agent at Princeton University.

7.     At all times material hereto, Defendant, Trustees of Princeton, knew or should have known that Defendant, Stevan Harnad, was conspicuously engaged in improper sex acts, sexual assault, sexual contact, and sexual abuse/grooming of Plaintiff, a minor child.

8.     Upon information and belief, Defendant, Stevan Harnad, is currently residing at 1100, Docteur-Penfield Avenue, #1512, Montreal, Quebec, Canada, H3A 1A8.

9.     Individual Defendants in the above caption case identified as Defendant Doe 1-10 (said names being fictitious, and hereinafter referred to as "Defendant Doe"), were, at all relevant times, employees and/or agents of the Defendant, Trustees of Princeton d/b/a Princeton University and/or Stevan Harnad, involved in the operation of Trustees of Princeton d/b/a Princeton

University and the hiring, admitting, assigning, retaining, and supervising of professors, teachers, and/or individuals, including Stevan Harnad. The identification of these individuals is not known by the Plaintiff at this time in the absence of discovery. Plaintiff reserves the right to substitute the name(s) for those agents designated as Defendant Doe when and if such information becomes available.

10.    Institutional/corporate Defendants in the above caption case identified as Defendant Doe Institution 1-10 (said names being fictitious, and hereinafter referred to as "Defendant Doe Institution") were, at all relevant times, incorporated and/or established associations, corporations, institutions, entities, schools, facilities, or other establishments that employed, hired, certified, assigned, retained, supervised, managed, oversaw, directed, administrated, and/or otherwise controlled one or more of the Defendants at or during all relevant times. These Defendant Doe Institutions were/are vicariously and derivatively liable for the negligent conduct of the aforementioned Defendants under the theories of respondeat superior, master-servant, agency, and/or right of control.

11.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, were empowered to supervise and control all professors, teachers, graduate students, graduate teaching assistants, graduate research assistants, psychology doctoral students, employees, and/or agents within the Trustees of Princeton d/b/a Princeton University, including Defendant, Stevan Harnad.

12.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, had/has access to and knowledge of information regarding the sexual misconduct of professors, teachers, graduate students, graduate teaching assistants, graduate research assistants, psychology doctoral students, employees, and/or agents including knowledge of pedophilia and/or sexually abusive conduct of individuals within the Trustees of Princeton d/b/a Princeton University and/or institution, including Defendant, Stevan Harnad.

13.    At all relevant times, Defendants, Trustees of Princeton d/b/a Princeton University, Stevan Harnad, Defendant Doe 1-10, Defendant Doe Institution 1-10, in this action were acting by and through themselves in their individual capacities, and/or additionally by and through their actual and/or ostensible/aided agents, servants, founders, employees, which include entities and/or individuals over whom they had control or right of control.

14.    At all times material hereto, Defendant, Stevan Harnad, was acting as a professor, teacher, graduate student, graduate teaching assistant, graduate research assistant, psychology doctoral student, employee and/or agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for one or more of the Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, and was engaged to perform services for the Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, and was subject to the Defendant's, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, oversight, supervision, management, direction, control, ostensible/aided control, and/or right to control the physical conduct required to perform such services.

15.    The Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, were the principals of Stevan Harnad, and the Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, acted only through the natural persons who were its professor, teacher, graduate student, graduate teaching assistant, graduate research assistant, psychology doctoral student, employee and/or agent hired, certified, assigned, retained, supervised, managed, overseen, directed, administrated, and/or otherwise controlled by and for said Defendants.

16.    Plaintiff, N.S., was an invitee at Defendant, Princeton University, from 1970 through 1972.

17.    Plaintiff, N.S., suffered extraordinary and severe harm due to the sexual misconduct committed during 1970 through 1972 by Defendant, Stevan Harnad, and the sexually hostile/abusive environment at Princeton University that was created by Defendants, Trustees of Princeton d/b/a Princeton University and/or Stevan Harnad, which the Defendants failed to correct and/or properly address despite their actual and/or constructive knowledge thereof and due to the negligence outlined below.

18.    During 1970 through 1972, Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, actually knew and/or had reason to know that Defendant, Stevan Harnad, engaged in sexual misconduct.

19.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, failed to take appropriate actions to protect Plaintiff against sexual harassment/misconduct/grooming at Princeton University despite having actual and/or constructive notice of the lewd and/or inappropriate conduct and/or sexual abuse by Defendant, Stevan Harnad, all in violation of the rights guaranteed to Plaintiff by the laws of New Jersey.

20.    Defendants, Trustees of Princeton d/b/a Princeton University, Stevan Harnad, Defendant Doe 1-10, Defendant Doe Institution 1-10, acted individually and through its employees and agents whose names and identities are not currently known, all of which acted with actual or apparent authority and all of whom aided in carrying out and/or permitting the sexual harassment/misconduct/grooming of the Plaintiff by the actions and inactions of Defendants.

21.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, acting through its administrators, and other employees and agents, knew and/or should have known about the specific sexual harassment/misconduct/grooming committed by Defendant, Stevan Harnad, and was deliberately or recklessly indifferent to this conduct, as demonstrated by the specific failures described below, thereby exposing and continuing to expose minor children in general, and Plaintiff in particular, to a sexually hostile

environment.

22.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, should have been aware of the sexual harassment/misconduct/grooming committed by Defendant, Stevan Harnad.

23.    Defendants, through their actions and inactions described herein, and through a pattern of deliberate and/or reckless indifference, created and permitted a severe, pervasive, and persistently sexually hostile environment.

24.    The indifference of Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, to the risks posed by Defendant, Stevan Harnad, and its affirmative acts created and/or permitted the opportunity for Stevan Harnad to commit sexual misconduct of Plaintiff, which resulted in a sexually hostile environment.

PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

Plaintiff proceeds by initials due to the subject matter of this action, and as identification poses a risk of mental harm, harassment, ridicule, and/or personal embarrassment.[1]

---

[1] As outlined in N.J.S.A. 2A:61B-1(f)(1), in actions under the Child Sexual Abuse Act: "the name, address, and identity of a victim or a defendant shall not appear on the complaint or any other public record as defined in P.L.1963, c.73 (C.47:1A-1 et seq.). In their place initials or a fictitious name shall appear."

## FACTUAL SUMMARY

25.    This action involves allegations that Defendant, Stevan Harnad, an adult male, while a professor, teacher, graduate student, graduate teaching assistant, graduate research assistant, psychology doctoral student, employee and/or agent of Princeton University targeted and groomed the fatherless Plaintiff, N.S., a female child, beginning at the age of 14 years old, at various places on the college campus premises, including but not limited to grounds, walkways,

corridors, hallways, lawns, parking lots, campus cafeteria, offices and classrooms in plain sight of the Proctors, faculty, students, employees, and/or administrators.

~~In June 1970, Defendant, the Trustees of Princeton University (the University) whilst operating Princeton University instituted an "Open Campus" policy after it was a closed campus for 65 years prior. The people of the town of Princeton were now invited to gather freely on the campus day or night. (See, Exhibit A: "University Gates Open," Town Topics, June 11, 1970).~~

~~Weeks after the new policy opening the campus to the public, a one ten-day period a night time curfew was implemented as a result of increased crime on campus. Leslie L. Vivian, Director of Community and Regional Affairs at Princeton University stated "[t]he decision to impose any limitation on night time use of the front campus was made reluctantly." He said, "because of the pleasure people derive from sitting with friends on the front campus, and because of the scarcity of other gathering places in Princeton, especially for teenagers." Hence, without question, minors were invited and encouraged to openly gather and loiter unsupervised on the campus. (See, Exhibit B: "Campus Open Again", Town Topics, September 1970; Exhibit C: "New Hope on Nassau Street," The Rotarian, Vol. 117, No October 4, 1970).~~

26.    In June 1970, the Defendant, Trustees of Princeton University, as owners, managers, administrators and operators of Princeton University, instituted an "Open Campus" policy, which invited residents of Princeton to gather freely on the campus anytime, day or night. (See Exhibit A: "University Gates Open", Town Topics, June 11, 1970).

~~1.~~27.    Minors were invited and encouraged to openly gather and loiter unsupervised on Princeton University's campus.

28.    Just weeks following the announcement of the opening of the campus, the Plaintiff, N.S., a fatherless 14- year-old, tender aged minor, and her peers, who resided in Princeton

Township entered the open Main Gate on Nassau Hall to socialize on the Lawn of the campus.

29.    The first encounter the then-14-year-old female Plaintiff had with the adult male Defendant Harnad was when she witnessed her 11-year-old sister and her peers leaving the Student Union together with Defendant Harnad. The Plaintiff was immediately suspicious of a male adult graduate student who was "hanging out" with prepubescent girls, and who appeared to target her little sister while walking closely together, conversing, and laughing. The Plaintiff confronted Defendant, and demanded he stop "hanging around" her sister.

30.    Soon after, in the days that followed, the Plaintiff, N.S., was alone waiting for her peers to join her on the campus lawn. The Defendant, Harnad, an agent of the University, approached the Plaintiff, and asked if he could sit, to which she replied, "it's a free country" ~~(GROOMING STAGE 1- Targeting a Victim)~~. Following small talk, the Defendant offered to buy her anything she wanted for lunch at the student union. The Plaintiff attempted to resist, but the Defendant was insistent.

31.    As they walked toward the open gate, the Defendant asked Plaintiff if she was a "virgin." At 14-years-old, the Plaintiff, N.S., was naturally shocked by the question and quickly told him the truth, that she was indeed a virgin. The Defendant told the Plaintiff he was delighted because he could not "be with her" if she was not a virgin. The Plaintiff understood that to mean he wanted to be her "boyfriend" and have sex with her.

32.    The Defendant approached and stalked the Plaintiff relentlessly on campus in plain sight. Defendant Harnad became a daily presence, mingling among the Plaintiff and her peers, as well as the Plaintiff's 11-year-old sister and her peers, on the front campus lawn and in the student union.

33.    ~~The Defendant portrayed himself as someone who cared for the Plaintiff like a father-figure. The Defendant repeatedly told the Plaintiff, N.S., that she was "special" and a "nymphet," as defined in the novel by V. Nabokov, "Lolita," which describes females between the~~

ages of nine and fourteen who are sexually attractive (GROOMING STAGES 2 & 3 The Bond, Gaining Trust + Fulfilling a Need). The Defendant gained the trust and fulfilled the need as a father-figure following the Plaintiff loss of her own father who had unexpectedly died the previous year.

34.    The sexual harassment/misconduct/grooming of Plaintiff, N.S., began and continued on the University campus, in plain sight for approximately 18 months.

35.    Defendant, Stevan Harnad, consistently offered illicit drugs and alcohol to Plaintiff and minor children while on campus in plain sight of the Proctors, faculty, students, employees, and/or administrators on a frequent basis.

36.    Defendant, Stevan Harnad, contributed to the delinquency of the minor Plaintiff, N.S., in plain sight through the deliberate and intentional influences of illicit drugs and alcohol to groom her on the premises of Princeton University which led to crimes of a sexual nature.

37.    The Defendant repeatedly told Plaintiff, N.S., that she was "special" and called her his "nymphet." This was a term he took from the Nabokov novel Lolita, the story of a tender-aged girl being sexually exploited by a pedophile.

38.    The Defendant Harnad had full access to a private office as well as classrooms at the Psychology Department at Princeton University. The Plaintiff, N.S., and other underaged girls, including her 11-year-old sister, were enticed to gather in a vacant classroom on campus to be hypnotized by said Defendant.

39.    During the "hypnosis game," the girls and others were instructed to lay down onto the floor, close their eyes, and use their imaginations while listening closely to what he referred to as the "induction." The pre-teens were encouraged to compete with each other to win the "game" by becoming the best hypnosis "subject," by going into a deep hypnotic trance and following all of Defendant Harnad's "suggestions."

40.    On one such occasion, the Plaintiff was instructed to sit on a chair, while the other

minor children were seated together on the floor to watch the induction. After approximately twenty minutes of hypnotizing the Defendant Harnad with the Plaintiff's eyes closed, suggested to her she would laugh upon opening her eyes. He also suggested that the Plaintiff would not remember a word of what had been suggested while she was under the influence of hypnosis. The Plaintiff was asked to open her eyes, and when she did, she laughed as if on cue, which in turn all the girls in the room laughed. The Defendant asked if the Plaintiff recalled anything said while in hypnosis, by which she declared she had absolutely no memory of the event. The Plaintiff, N.S., believed she had won the game as a strong "subject." Again, the Defendant told the Plaintiff she was "special."

41.    Defendant, Stevan Harnad, brazenly walked with Plaintiff and other minor children to the campus classroom in plain sight to engage in sexual harassment/misconduct/grooming.

42.    After carefully establishing trust, Defendant Harnad isolated the Plaintiff and her sister from their peers. He invited the sisters to his office where he provided marijuana and physical affection, such as sitting on his lap or holding hands. He taught the Plaintiff and her sister the difference between a platonic way of holding hands (folding palms together) and the way lovers hold hands (interlocking fingers).

43.    The Defendant, an agent, routinely held hands, interlocking fingers, with the Plaintiff, N.S., and her sister, sometimes simultaneously on campus and in plain sight of the Proctors, faculty, students, employees, and/or administrators on a frequent basis. university staff. The Defendant also routinely bought snacks and meals for the Plaintiff and her sister at the student union.

44.    Defendant, Stevan Harnad, would openly and consistently take photos of Plaintiff and other minor children.

2.45.    The Defendant also routinely bought snacks and meals for the Plaintiff and her sister at the student union.

3.46.   On multiple occasions Defendant, Stevan Harnad, enticed Plaintiff, N.S., to steer his vehicle to make her feel special.

47.   Defendant, Stevan Harnad, openly preferred the company of Plaintiff and other minor children over adults while on campus.

48.   The Defendant's, Stevan Harnad, abovementioned actions, grooming, and public display of affection with Plaintiff, a minor child, occurred in plain sight of the Proctors, faculty, students, employees, and/or administrators for a long period of time, i.e., for approximately 18 months, on campus.

4.49.   Grooming is a crime of a sexual nature.

5.50.   Defendant's, Stevan Harnad, grooming behaviors were open, obvious and noticeable.

51.   Grooming is a firmly established concept based on Child Sex Abuse (CSA) research.

6.52.   Grooming tactics are red flags and serve as notice of inappropriate sexual conduct.

7.53.   These crimes of a sexual nature continued on campus in plain sight for 18 months against Plaintiff, N.S., by perpetrator Defendant. Harnad acted as a groomer and engaged in psychological manipulations against Plaintiff, N.S., with the sole purpose and intention to sexually abuse and assault her.

54.   Groomers often engage in behaviors that seem normal or even caring to outsiders, but these behaviors are part of a calculated strategy to gain the child's trust and manipulate them. These actions are done "in plain sight."

55.   Grooming is recognized as a precursor to more serious criminal acts, such as sexual exploitation, prohibited sexual acts, sexual abuse, sexual assault, and is a crime of a sexual nature including sexual misconduct.

56.   Researchers have described child grooming including, but not limited to, the

following Six Stages with unique descriptors added below based on the experiences of Plaintiff, N.S., during the material time herein.

57.    Grooming Stage 1 - Targeting the Victim: The perpetrator identifies a vulnerable child, often one who is isolated, emotionally needy, or experiencing difficulties at home or school. Plaintiff, N.S., was an emotionally lonely fatherless 14-year-old girl when Harnad first began targeting her as his victim of sexual crimes exclusively on the premises of the Defendant, Trustees of Princeton University.

58.    Grooming Stage 2 - Gaining Trust: The groomer builds a relationship with the child, often by giving them attention, gifts, or special treatment to make the child feel valued and understood. Harnad manipulated and brainwashed Plaintiff, N.S., to look up to him as a trusted adult who cared for and lectured her, as a parent would, about not smoking cigarettes, eating meat, or wearing leather all on the campus of the Defendant, Trustees of Princeton University.

59.    Grooming Stage 3 - Filling a Need: The groomer continues to build the relationship by filling a void in the child's life, such as providing emotional support or buying gifts. Plaintiff, N.S., was told by Harnad that she was "special" and lavished attention on Plaintiff publicly and called her his "nymphet."

60.    Grooming Stage 4 - Isolation: The groomer begins to isolate the child from their friends and family, creating a dependence on the groomer. Plaintiff, N.S., grew increasingly dependent on Harnad as he completely isolated her from peers, friends, and family. He also deliberately drove a wedge between the sisters, further isolating them from each other all while sexually abusing them during the same period of time.

61.    Stage 5 - Sexualizing the Relationship: The groomer introduces sexual content or behavior, often gradually, to desensitize the child. The grooming activities began on campus with sexually explicit talks and inappropriate touching all while on campus. The grooming by Harnad never stopped, even after the occurrence of multiple sexual assaults. While Harnad's willful and

wanton sexual abuse continued, Plaintiff, N.S., was regularly mentally manipulated and sexually assaulted.

62.    Grooming Stage 6 - Maintaining Control: The groomer uses threats, manipulation, or guilt to maintain control over the child and keep them silent about the abuse. Harnad repeatedly cautioned Plaintiff not to tell anyone in society about their relationship because no one would understand.

~~8.~~63.    The grooming includes, but not limited to, acts of intoxicating Plaintiff, N.S., psychologically manipulating Plaintiff, N.S., hypnotizing Plaintiff, N.S., exposing her to sexually explicit discussions and teachings that included unwanted touching on campus of the Defendant, Trustees of Princeton University.

~~9.~~64.    The grooming occurred on Princeton University premises in plain sight by Harnad including but not limited to, hypnosis games, sexually explicit talk, seduction, holding hands with interlocking fingers, sitting on Harnad's lap, inappropriate physical touching, and sitting close to Harnad, with Plaintiff, N.S., on one side and Plaintiff, M.C., on the other side, having each sister touch one of his legs.

~~10.~~65.    ~~This crime continued on campus in plain sight for 18 months of the Proctors (Campus Police) faculty, students, employees, administrators, N.S. 's sister, Plaintiff N.S., and other minor children.~~ Defendant Harnad also drove Plaintiff, her little sister, and peers in his car, a 1970's Ford Maverick, to his apartment to gain their trust. Activities consisted of taking turns steering the Defendant's car, as well as hypnosis games, cooking, eating, snacking, and smoking marijuana. After trust was established, the Defendant isolated the Plaintiff and her sister by no longer allowing their peers to come along to his apartment. ~~The Defendant isolated the Plaintiff, N.S., and her sister for the purpose of molesting and sexually abusing them, separately "taking turns" in the Defendant's bedroom. (GROOMING STAGES 4 & 5 ISOLATING AND SEXUALLY ABUSING THE CHILD)~~

~~As stated, Defendant Harnad's crimes of a sexual nature and sexual abuse became routine on and around campus continuously for an eighteen-month period.~~

66.     Once trust and isolation were established, he drove the Plaintiff from campus to his residence and back again on a regular basis for the sole purpose of sexually assaulting the Plaintiff and her sister.

67.     The sexual abuse and/or sexual contact escalated when the Defendant isolated the Plaintiff, N.S., and her sister for the purpose of molesting and sexually abusing them, separately "taking turns" in the Defendant's bedroom.

~~11.~~68.     The sexual abuse that took place in the bedroom, included, but not limited to, the Defendant removing all clothing of himself and stripping the Plaintiff, N.S., (full nudity), gazing and touching of the Plaintiff's breasts, buttocks, vagina, along with the Defendant ultimately spreading the Plaintiff's legs to gaze at her genitals and perform digital and oral penetration and clitoris stimulation (cunnilingus) to induce sexual arousal and orgasm of the Plaintiff and himself. The Defendant told the Plaintiff the number of orgasms he could induce on her in a single session was a "game."

~~12.~~69.     Additionally, the Defendant sexually stimulated and digitally penetrated both the Plaintiff, N.S., and her 11-year-old sister simultaneously making them witnesses of each other's sexual abuse on at least one occasion, while lying on the living room floor on each side, under a blanket and under their clothes, pretending to watch TV. ~~(GROOMING STAGE 6: MAINTAINING CONTROL & SECRECY).~~

70.     While Defendant's, Stevan Harnad, willful and wanton sexual abuse continued, Plaintiff, N.S., was regularly sexually assaulted by Defendant, Stevan Harnad.

71.     Plaintiff was forced to watch her 11-year-old sister routinely being molested and was induced to keep the sexual abuse a secret to protect the Defendant from legal scrutiny and criminal prosecution as stated by the Defendant.

~~The campus police (known as Proctors) were present and openly witnessed the red flags and visible grooming behavior over an eighteen-month period. It became clear the proctors were keenly aware of the visible grooming of a sexual nature as they questioned the Plaintiff, N.S., on many occasions if the Defendant was her so-called "boyfriend." In spite of this apparent awareness, there were no preventive measures put in place, no safety protocols or policies, no known investigation, or steps to intervene despite the open visible predatory behavior of the Defendant.~~

72.    After eighteen consecutive months of physical, sexual, psychological, mental, and emotional abuse, the Plaintiff, N.S., intervened in Defendants' abuse directly following her sister's refusal to further engage with the perpetrator.

73.    Subsequently, Defendant Harnad sexually focused fully on the Plaintiff.

74.    ~~He~~ Defendant, Stevan Harnad, secretly entered the family home through the basement door in the rear of the house and entered the Plaintiff's bedroom. He laid on top of the Plaintiff in a sexual manner, repeatedly claiming he loved her. As Defendant Harnad pushed his tongue into her mouth and began to remove her clothes, the Plaintiff experienced involuntary paralysis of her entire body. The Plaintiff, N.S, was unable to move or speak for approximately 60-90 seconds. When she regained muscle and vocal control, she curled up into the fetal position, she burst into tears and screamed. Fearing he had been caught, Defendant Harnad hurriedly left through the basement door.

~~Grooming is a crime of a sexual nature. This crime continued on campus for 18 months in plain sight of the Proctors (Campus Police) faculty, students, employees, administrators, Plaintiff N.S., Plaintiff's sister, and other minor children. Defendant Harnad picked up Plaintiff N.S. in his gold Maverick automobile, from campus and drove her to his residence for the purpose of isolating Plaintiff N.S. in order to sexually abuse her (GROOMING STAGES 4 & 5 ISOLATING AND SEXUALLY ABUSING THE CHILD).~~

~~The grooming continued for a long period of time, i.e., for approximately 18 months, on campus. The grooming activities on campus never stopped, even after the occurrence of multiple sexual assaults.~~

75.    As stated, Defendant's, crimes of a sexual nature and sexual abuse became routine on and around campus continuously for an eighteen-month period.

76.    While Defendant Harnad's willful and wanton sexual abuse continued, Plaintiff N.S. was regularly sexually assaulted by Defendant Harnad. Defendant Harnad digitally penetrated Plaintiff N.S.'s vagina and stimulated her clitoris. Defendant Harnad sexually molested Plaintiff N.S. by touching and stimulating her clitoris and penetrating her vagina repeatedly. Furthermore, Defendant Harnad digitally penetrated both Plaintiffs' vaginas and stimulated their clitorises simultaneously making them witnesses of each other's sexual abuse on at least one occasion.

77.    Defendant, Stevan Harnad, engaged in a calculated series of manipulation and grooming of Plaintiff as described and outlined above.

78.    Defendant, Stevan Harnad, conspicuously, willfully, consistently and wantonly developed a known inappropriate pseudo-romantic relationship, in plain sight, with Plaintiff, N.S., on the college campus premises, including but not limited to grounds, walkways, corridors, hallways, lawns, parking lots, campus cafeteria, offices and classrooms in plain sight of Proctors, faculty, students, employees, and/or administrators, making the visible signs of child sex abuse frequent patterns of increasingly suspicious criminal behavior.

79.    Defendant, Stevan Harnad, as professor, teacher, graduate student, graduate teaching assistant, graduate research assistant, psychology doctoral student, employee and/or agent was hired, certified, assigned, retained, supervised, managed, overseen, directed, administered, and/or otherwise controlled by and for one or more of the Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10.

80.    As it relates to the Trustees of Princeton, its University employees and agents,

regularly observed Plaintiff in the presence of Harnad and his grooming of Plaintiff.

~~Grooming is the visible part of crimes of a sexual nature and the sexual assault is typically the invisible part. However, in these Plaintiffs' cases, the sexual abuse was made visible for her sister and vice versa.~~

~~As it relates to the Trustees, its University employees and agents, including Campus Police, referred to as "Proctors," regularly observed Plaintiff N.S. in the presence of Defendant Harnad and his grooming of Plaintiff N.S.~~

81.    Based upon the frequency of these activities and actions by Defendant Harnad, easily on hundreds of occasions over the entire 18-month period, these inappropriate grooming tactics by Defendant Harnad, an adult male, who represented himself as a Professor like figure on campus, was or should have been noticed by the Proctors; yet nothing was done by them to stop it. ~~The red flags and notice were present. Defendant Harnad's grooming behaviors were open, obvious, and noticeable. The Plaintiff, N.S. clearly recalls that the Proctors did ask her on more than one occasion what kind of relationship she had with Defendant Harnad, but there was no follow-up, intervention or investigation as to why this adult man was infiltrating the groups of children on campus on a frequent almost daily basis. There was no form of prevention in place (safety protocols or policies) designed to intervene and stop behavior such as Defendant Harnad's.~~

82.    Proctors were present and openly witnessed the red flags and visible grooming behavior over an eighteen-month period. It became clear the proctors were keenly aware of the visible grooming of a sexual nature as they questioned the Plaintiff, N.S., on many occasions if the Defendant was her so-called "boyfriend." However, there was no follow-up, intervention or investigation as to why this adult man was infiltrating the groups of children on campus on a frequent almost daily basis.

83.    Proctors failed to investigate further their suspicions and/or concerns of Defendant, Stevan Harnad, an adult male, preferring the company of minor children in general, and Plaintiff

in particular.

13.84.    Trustees of Princeton University's employees or agents, despite having knowledge, or despite the fact that they should have had knowledge, of Harnad's propensity for pedophilia, and use of the University's campus and facilities to commit the acts alleged herein, allowed Defendant, Stevan Harnad, to perpetuate the aforesaid acts and crimes of a sexual nature against the then minor Plaintiff.

85.    The University failed to implement and/or enforce policies to protect minor children while on campus, designed to intervene and stop behavior such as Defendant's, Stevan Harnad.

14.86.    The University also failed to initiate any safety procedures, precautions, protocols, or policies when opening its campus up to minors.

Trustees of Princeton University's employees or agents, despite having knowledge, or despite the fact that they should have had knowledge, of Defendant Harnad's propensity for pedophilia, and use of the University's campus and facilities to commit the acts alleged herein, allowed Defendant Harnad to perpetuate the aforesaid acts and crimes of a sexual nature against the then minor Plaintiff, N.S. The University further also failed to initiate any safety procedures, precautions, protocols, or policies when opening its campus up to minors.

87.    The ongoing predatory behavior of Defendant Harnad, an adult male, sitting, talking, walking with the Plaintiff N.S. in the walkways on campus, and then transporting her in his Maverick to and from campus to his residence and then back again, without any protection from the University, furthered the sexual abuse and sexual abuse frequency.

88.    Defendant Harnad's grooming of Plaintiff, N.S. for the purpose of sexually abusing her lasted for eighteen months and continued persistently and conspicuously on the University campus.

89.    The grooming includes, but not limited to, acts of intoxicating N.S.,

psychologically manipulating N.S., hypnotizing N.S., exposing her to sexually explicit discussions and teachings that included unwanted touching in plain sight on the University Campus.

90.    These acts in plain view occurred in front of Nassau Hall, inside Defendant Harnad's office and classrooms in the psychology department, in front of the Fountain of Freedom, campus cafeteria, and campus walkways on the University campus.

91.    At all material times hereto, Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, knew or should have known that Harnad sexually abused children and/or was not fit to serve as a professor, teacher, graduate student, graduate teaching assistant, graduate research assistant, psychology doctoral student, employee and/or agent.

92.    At all material times hereto, Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, knew or should have known that Harnad had been and/or was abusing Plaintiff and/or other minor children at Princeton University, and other locations visited by and/or related to the Princeton University's activities, events, and/or duties.

93.    At all material times hereto, Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, took no action and/or failed to timely and adequately take action to warn or otherwise protect minor children and/or social invitees of Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, including Plaintiff, N.S., from Defendant, Stevan Harnad.

94.    At all material times hereto, Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, knew or should have known that Harnad had access to and consistently utilized Princeton University's classrooms and/or offices, for 18 months, to lure in minor children to sexually abuse and/or engage in inappropriate sexual contact with minor children, including Plaintiff.

95.    At all material times hereto, Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, took no action and/or failed to timely and adequately implement policies to protect minor children invitees of Princeton University, creating a sexually hostile environment which permitted Harnad to sexually exploit minor children.

15.96. It was Plaintiff's, N.S., sanctioned presence on the premises of the University that put her in harm's way and caused her permanent lifelong psychological and emotional damages. As well as life-long physical ailments in later years in life. Therefore, Plaintiff is entitled relief for the above acts and omissions based on the further allegations set forth herein.

As set forth more fully herein, negligence, gross negligence, recklessness, and/or punitive behavior of the Defendants, jointly and severally, was a direct and proximate cause of harm and damages to the Plaintiff.

97.    Plaintiff brings this lawsuit pursuant to the New Jersey's Victim's Rights Bill, which revived the previously time-barred claims arising from sexual abuse for a limited time. Plaintiff has sufficiently alleged a claim that is revived under the Victims' Rights Bill, and nothing more is required at the pleading stage.

16.98. This action is further brought pursuant to the provisions of N.J.S.A. 2A:14-2(b)(a) which states, in pertinent part: an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1), that occurred prior to the effective date of P.L.2019, c.120 (C.2A:14-2a et al.), and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

17.99. This action is further brought pursuant to the terms and provisions of and N.J.S.A.2A:53A-7 et. seq., as amended by Senate Bill 477, which states, in pertinent part, that any

nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustee, director, officer, employee, agent, servant or volunteer causing damage by a willful, wanton or grossly negligent act of commission or omission, including sexual assault [and] any other [crimes] crime of a sexual nature or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1); (b) any nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes causing damage by any negligent act resulting in the commission of sexual assault, any other crime of a sexual nature and/or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1); or (c) any trustee, director, officer, employee, agent, servant or volunteer of a nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes causing damage by any negligent act resulting in the commission of sexual assault, any other crime of a sexual nature and/or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1) if the trustee, director, officer, employee, agent, servant or volunteer had a supervisory or oversight role over the person committing the act of sexual assault, other crime of a sexual nature and/or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1) shall not be granted immunity for such conduct, actions, inactions and/or omissions.

100.    Plaintiffs' injuries and/or damages were caused solely by negligence, gross negligence, recklessness, and/or punitive behavior of the Defendants, as set forth more fully herein, and were not caused or contributed thereto by any negligence, gross negligence, recklessness, and/or punitive behavior on the part of the Plaintiff.

## FACTUAL ALLEGATIONS AS TO EACH DEFENDANT

## COUNT I– GROSS NEGLIGENCE

### Plaintiff, N.S.
### v.
### Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, and Defendant Doe Institution 1-10

101.    The previous paragraphs set forth above are incorporated herein by reference.

102.    The Open Campus Policy was symbolized by the opening of the FitzRandolph Gate, which had been closed for 65 years. By permitting individuals, including local minors, to access the campus freely at all hours, the policy exposed young invitees, such as Plaintiff, N.S., to significant and foreseeable dangers. The policy failed to adequately protect these minors from harm through their omission of any precautions.

103.    Prior to enacting the open campus policy, Princeton University knew and/or should have known that its campus was unsafe for minor children due to the preexisting illicit drug and alcohol use, and crime that occurred on campus.

104.    On January 25, 1967, the Daily Princetonian reported that a student was "charged with 'illegal purchase, transport, possession, storage, consumption, sales and distribution of alcohol.'" Such student was one of "the top men in a ring of student salesmen of illegal liquor on the Princeton campus." (See Exhibit B: "State Agents Raid Dillon Gym, Seize Senior and Liquor Cache," The Daily Princetonian, Vol. XC, No. 148, January 25, 1967).

105.    Furthermore, according to the Daily Princetonian, a study that interviewed 150 students, concluded that most of them consumed illicit drugs. The University was referred to as a

"dope ring" due to drugs on campus.  (See Exhibit C: "Canvass by Press Club Studies Drug Problem," The Daily Princetonian, Vol. XCI, No. 41, April 10, 1967; See Exhibit D: "The Marijuana Case," The Daily Princetonian, Vol. XC, No. 141, January 9, 1967).

106.    In 1969, a student used a Princeton University room to hold "constant open house for high school students to enjoy drugs and sex." See Exhibit E: "Middle Earth Probing Poses Pesky Policy Paradoxes," The Daily Princetonian, Vol. 93, No. 57, April 29, 1969).

107.    Prior to opening the campus to minor children, Defendant, Trustees of Princeton, knew or should have known that criminal activities, including robberies, a purse snatching, knife slashing and drug use, occurred on campus.

108.    Despite such a hostile environment, in June 1970, Defendant, Trustees of Princeton, opened its campus to the public, inviting people of all ages including unsupervised children as young as fourteen (14) years old.

109.    A night time curfew was initiated a few weeks after the new open campus policy commenced due to an increase in crime on campus. However, ten days later the campus curfew was lifted.  Leslie Vivian, Director of Community and Regional Affairs at the University, explained: "The decision to impose any limitation on night time use of the front campus was made reluctantly because of the *pleasure people derive from sitting with friends on the front campus, and because of the scarcity of other gathering places in Princeton, especially for teenagers."*  As documented in The Rotarian October 4, 1970 "Princeton University campus…all forms of drugs were used and sold there." Without question, minors were invited and encouraged to openly gather and loiter unsupervised on the campus.  (See Exhibit F: "Campus Open Again", Town Topics, September 1970.; See Exhibit G: "New Hope on Nassau Street," The Rotarian, Vol. 117, No. October 4, 1970).

110.    Despite the increase in crime, Defendant, Trustees of Princeton, lifted the curfew on its campus with a history of criminality to minor children without implementing any safety procedures, precautions, protocols, or policies to oversee and protect minor children, such as Plaintiff.

111.    At all times material hereto, the University campus was unsafe for women and minor children. In 1972, a faculty's wife was raped in the laundry room of the Magie Apartments. In addition, a student was raped in Prospect Garden in September 1974. Furthermore, in October 1974, another woman "suffered a broken jaw when she was punched by an assailant she discovered in her Brown Hall room during the afternoon." (See Exhibit H: "University Planning New Security Measures as Crime Rate Creates Mounting Problem," Town Topics, Vol. XXIX, No. 42, December 19, 1974).

112.    "[O]n November 17, 1974, when one of the women formerly living in 2 Dickinson was assaulted, the front of her dress ripped open the fact that the assailant was believed to be the same man previously responsible for [other] harassments left students with dwindling confidence in the ability of the University security force to prevent such offenses from happening." Id.

113.    Some conservative students would argue "that the University is no longer a safe haven as a result of neglect by the University administration and the security force." Id.

114.    Prior to opening the campus to minor children, Defendant, Trustees of Princeton, knew and/or should have known that inviting minor children to a predominately adult male school where illicit drug use and criminal activities occurred would create a sexually hostile environment.

115.    As a result of this environment, Plaintiff, N.S., was exposed to a sexual predator, Stevan Harnad.

116.    Defendant, Trustees of Princeton, recklessly enacted the Open Campus Policy which created an environment where a predator, Harnad, as an agent of the University, was able to groom, manipulate, and ultimately exploit the sisters, Plaintiffs, N.S. and M.C., with impunity.

117.    But for Princeton University's gross negligence in enforcing its policies the perpetrator would not have had unfettered access to these vulnerable children, Plaintiffs, M.C. and N.S.

118.    The University's utter disregard for the safety of Plaintiff, N.S., by inviting minors to an unsafe campus, combined with its reckless failure to monitor and control the actions of its agents, including Defendant Harnad, makes the harm suffered by the sisters, Plaintiffs, M.C. and N.S., under the totality of the circumstances a direct and foreseeable consequence of the University's gross negligence.

119.    By allowing minors to be exposed to drugs, alcohol, and sexual predators, the University engaged in conduct that endangered the welfare of children. The University's reckless policies and failure to provide a safe environment facilitated the perpetrator, Defendant Harnad's ability to groom, intoxicate, drug, and sexually exploit the sisters, Plaintiffs, N.S. and M.C.

120.    Such grooming towards a tender-aged child occurred openly and obviously in front of Nassau Hall, inside Stevan Harnad's office and classrooms in the psychology department, in front of the Fountain of Freedom, campus cafeterias, and campus walkways on the premises of Defendant, Trustees of Princeton University, for eighteen months.

121.    The Defendant, Trustees of Princeton, in their ownership, management, administration and operation of Princeton University, as a result of its open invitation and inducement to minors such as Plaintiff, N.S., to enter its premises, had a duty to protect Plaintiff while she was on said premises and provide a safe environment to minor children.

101.122.    The Defendant, Trustees of Princeton, further had a duty, by and through its agents, servants and employees, to institute policies, procedures, protocols, directives and/or safety measures to ensure the protection and safety of minors, such as the Plaintiff, N.S., from the crimes of a sexual nature, sexual assault and/or sexual abuse of predators and pedophiles such as the Defendant, Stevan Harnad.

102.123.    The Defendant, Trustees of Princeton, further had a duty, by and through its agents, servants and employees, to prevent the exchange of illicit drugs and alcohol to minor children, such as the Plaintiff, N.S., on campus by Defendant, Stevan Harnad, as the professor, teacher, graduate student, graduate teaching assistant, graduate research assistant, psychology doctoral student, employee and/or agent of the Defendant, Trustees of Princeton University.

103.124.    The Defendant, Trustees of Princeton University, further had a duty, by and through its agents, servants and employees, to recognize the red flags of crimes of a sexual nature against minor children, such as Plaintiff while on campus.

104.125.    The Defendant, Trustees of Princeton University, in their ownership, management, administration and operation of Princeton University breached said duties to the Plaintiff, N.S., as a result of which said Plaintiff was invited by Defendant, Trustees of Princeton University, to its campus, and as a direct result of which Defendant, Stevan Harnad, engaged in the psychological manipulation of her, physically assaulting her, "hypnotizing" her and other children, including her sister, acts of seduction, sexually explicit discussions, intimate touching, and committing crimes of a sexual nature against Plaintiff and her sister in clear sight of Defendant, Trustees of Princeton University, staff, agents, servants and/or employees.

126.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, were grossly negligent under the facts as aforesaid in that these

Defendants acted or failed to act: with complete disregard of the rights, safety, and well-being of others; in a palpably unreasonable manner; in an outlandish fashion; with discriminatory behavior; and/or failed to exercise slight care or diligence under these circumstances.

105.127.    As a direct result of Defendant's, Trustees of Princeton University, in their ownership, management, administration, and operation of Princeton University breaches as aforesaid, and, its conduct and actions described herein, Plaintiff, N.S., was caused to be physically and sexually assaulted by the Defendant, Stevan Harnad, sexually abused by him, and, was further caused to sustain severe and permanent emotional and psychological harm and distress.

WHEREFORE, Plaintiff, N.S., demands judgment against Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, jointly, severally, and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems just and equitable.

SECOND COUNT-THE TRUSTEES OF PRINCETON UNIVERSITY – DUTY OF A PROPERTY OWNER TO PROTECT A LICENSEE/SOCIAL GUEST AGAINST FORSEEABLE RISKS OF HARM

1. Plaintiff, N.S., repeats and reiterates each and every allegation of the First Count as if fully set forth herein at length.

2. This action is further brought pursuant to the provisions of N.J.S.A. 2A:14-2(b)(a) which states, in pertinent part: an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1), that occurred prior to the effective date of P.L.2019, c.120 (C.2A:14-2a et al.), and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

3. This action is further brought pursuant to the terms and provisions of and N.J.S.A. 2A:53A-7 et. seq., as amended by Senate Bill 477, which states, in pertinent part, that any

nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustee, director, officer, employee, agent, servant or volunteer causing damage by a willful, wanton or grossly negligent act of commission or omission, including sexual assault [and] any other [crimes] crime of a sexual nature or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1); (b) any nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes causing damage by any negligent act resulting in the commission of sexual assault, any other crime of a sexual nature and/or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1); or (c) any trustee, director, officer, employee, agent, servant or volunteer of a nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes causing damage by any negligent act resulting in the commission of sexual assault, any other crime of a sexual nature and/or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1) if the trustee, director, officer, employee, agent, servant or volunteer had a supervisory or oversight role over the person committing the act of sexual assault, other crime of a sexual nature and/or sexual abuse as defined in section 1 of P.L.1992,

c.109 (C.2A:61B-1) shall not be granted immunity for such conduct, actions, inactions and/or omissions.

4. In June 1970 PRINCETON UNIVERSITY, which was owned, managed administered and operated by the Defendant the TRUSTEES OF PRINCETON UNIVERSITY, promulgated and administered a specific policy, practice, protocol and procedure to openly invite the local community, including minors, onto its premises to gather and loiter.

5. As a result of said policy, practice, protocol and procedure, Plaintiff, N.S. was induced into entering said Defendant's premises where she encountered the Defendant STEVAN HARNAD on campus.

6. Plaintiff's presence was conspicuous as she and numerous other tender-aged children

were invited onto said Defendant's premises.

7. The Defendant the TRUSTEES OF PRINCETON UNIVERSITY, in their ownership, management, administration and operation of PRINCETON UNIVERSITY, as a result of its open invitation and inducement to minors such as Plaintiff N.S. to enter its premises, had a duty to protect Plaintiff while she was on said premises from predators and pedophiles such as the Defendant STEVAN HARNAD; had a duty, by and through its agents, servants and employees, to recognize the red flags of crimes of a sexual nature, and, further had a duty, by and through its agents, servants and employees, to institute policies, procedures, protocols, directives and/or safety measures to ensure the protection and safety of minors, such as the Plaintiff N.S., from the crimes of a sexual nature, sexual assault and/or sexual abuse of predators and pedophiles such as the Defendant STEVAN HARNAD.

8. The Defendant the TRUSTEES OF PRINCETON UNIVERSITY, in their ownership, management, administration and operation of PRINCETON UNIVERSITY breached said duties to the Plaintiff, N.S., as a result of which said Plaintiff was invited by Defendant STEVAN HARNAD, to continue to return to the Defendant TRUSTEES OF PRINCETON UNIVERSITY premises, and as a direct result of which Defendant STEVAN HARNAD engaged in the psychological manipulation of her, physically assaulting her, "hypnotizing" her and other children, including her sister, acts of seduction, sexually explicit discussions, intimate touching, and committing "red-flag" crimes of a sexual nature against Plaintiff and her sister in clear sight of Defendant the TRUSTEES OF PRINCETON UNIVERSITY staff, agents, servants and/or employees. Such red flag behavior towards a tender-aged child occurred openly and obviously in front of Nassau Hall, inside STEVAN HARNAD's office and classrooms in the psychology department, in front of the Fountain of Freedom, campus cafeterias, and campus walkways on the premises of Defendant the TRUSTEES OF PRINCETON UNIVERSITY.

9. As a direct result of Defendant the TRUSTEES OF PRINCETON UNIVERSITY's, in

~~their ownership, management, administration and operation of PRINCETON UNIVERSITY~~

~~breaches as aforesaid, and, it's conduct and actions described herein, the Plaintiff, N.S., was~~

~~caused to be physically and sexually assaulted by the Defendant STEVAN HARNAD, sexually~~

~~abused by him, and, was further caused to sustain severe and permanent emotional and~~

~~psychological harm and distress~~

~~10.    The Defendant the TRUSTEES OF PRINCETON UNIVERSITY, in their~~

~~ownership, management, administration and operation of PRINCETON UNIVERSITY further~~

~~engaged in willful and wanton, and, grossly negligent conduct and omissions in its' breaches of~~

~~the aforesaid duties that enabled Defendant STEVAN HARNAD to physically and sexually~~

~~abuse the Plaintiff, and who, as such, is further directly responsible for the injuries, damages and~~

~~losses suffered by the Plaintiff, N.S., described herein.~~

~~11.    Further, as Defendant the TRUSTEES OF PRINCETON UNIVERSITY, in their~~

~~ownership, management, administration and operation of PRINCETON UNIVERSITY conduct~~

~~was intentional willful, wanton, malicious, carried out with a willful disregard for the Plaintiff's~~

~~safety, health and well-being and was further grossly negligent, as a direct result of which~~

~~Plaintiff, N.S., sustained the injuries, damages and losses set forth herein, the Plaintiff is also~~

~~entitled to an award of Punitive Damages pursuant, to N.J.S.A. 2A:15-5.2 et seq. and N.J.A.C.~~

~~30:13-4.2, et seq.~~

~~WHEREFORE, Plaintiff N.S. demands judgment for compensatory and exemplary~~

~~(punitive) damages against the Defendant TRUSTEES OF PRINCETON UNIVERSITY as~~

~~owner, manager, administrator and operator of PRINCETON UNIVERSITY on this Count,~~

~~together with interest, attorney's fees and costs of suit.~~

## COUNT II – NEGLIGENT HIRING, SUPERVISION, AND/OR RETENTION

### Plaintiff, N.S.
### v.
### Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10

128.    Plaintiff repeats and reiterates each and every allegation of the prior Counts as if fully set forth herein at length.

106.129.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, knew or should have known of the need to properly and effectively observe, manage, direct, oversee, and/or supervise students, professors, teachers, employees, agents, servants, representatives, and/or ostensible/aided agents in their relationships with minor children on campus.

130.    Defendants, Trustees of Princeton d/b/a Princeton University, knew or should have known of the particular risk posed by Harnad based on, among other things, his inappropriate and/or questionable conduct, his behavior indicative of an intent to isolate, groom, and/or facilitate sexually contacting and/or abusing vulnerable, minor children, included, but was not limited to, acts of intoxicating N.S., psychologically manipulating N.S., hypnotizing N.S., exposing her to sexually explicit discussions and teachings that included unwanted touching in plain sight, unwanted sexual contact, and forcible sexual intercourse without consent.

107.131.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, knew and/or should have known prior to and/or contemporaneous with the relevant time frame during which N.S was sexually abused by Harnad that Plaintiff and other minor children and/or invitees of the school/University were vulnerable to and potential victims of sexual abuse or misconduct.

108.132.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, also knew and/or should have known prior to and/or

contemporaneous with the relevant time frame during which N.S was sexually abused by Harnad that the access to a vulnerable minor children, together with the trust and authority placed in his position, makes the position an enticing vocation to sexual molesters, sexual predators, and/or others seeking to abuse and exploit minor invitees.

133.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, owed a duty to exercise reasonable care in the hiring, certifying, assignment, control, selection and/or retention of employees, agents, servants, representatives, and/or ostensible/aided agents, situated in and/or located at the Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, and specifically a duty to be on high look out for possible sexual molesters, sexual predators, and others seeking to abuse and exploit minor children on campus.

134.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, owed a duty to exercise reasonable care in the oversight, management, and/or supervision of students located at the Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, and specifically a duty to be on high look out for possible sexual molesters, sexual predators, and others seeking to abuse and exploit minor children on campus.

135.    The negligence, carelessness, and/or reckless disregard of Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, for the conduct of their actual or apparent students, professors, teachers, employees, agents, servants, representatives, and/or ostensible/aided agents, in the hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of Stevan Harnad consists of one or more of the following:

        a.    Failing to properly screen students, professors, teachers, employees, agents, servants, representatives, and ostensible/aided agents adequately;

b.   Failure to properly investigate complaints of sexual abuse and sexual harassment, inappropriate behavior and/or other abusive behavior;

c.   Providing "cover" and/or rationalizations for inappropriate/abusive misconduct by applying euphemistic and false designations to and/or contrived and imagined explanations for their conduct and/or the reasons for same;

a.d. Minimizing, ignoring or excusing inappropriate or questionable behavior and/or misconduct by students, professors, teachers, employees, agents, servants, representatives, and ostensible/aided agents over a period of months, years and/or decades;

e.   Failure to properly and/or adequately warn students, and/or the public at large, including, but not limited to, Plaintiff and similarly situated minor children regarding the inappropriate behavior and/or misconduct of Stevan Harnad other Defendants, and/or other abusive students, professors, teachers, employees, agents, servants, representatives, and/or ostensible/aided agents, despite knowledge of the dangers they presented and the harmful and complicit culture and environment created by such failures to warn;

f.   Enrolling students and/or assigning professors, teachers, agents, servants, representatives, and/or ostensible/aided agents known to have engaged in questionable and/or inappropriate behavior or misconduct and/or known to be pedophiles and/or sexual predators, including but not limited to, Stevan Harnad, and/or other Defendants, to a position in the business where said individual(s) had/have regular contact with minor children and/or invitees;

g.   Failure to report criminal activity, including sexual abuse, to appropriate law enforcement agencies;

h.   Negligent failure to provide a safe environment and protective culture to minor children and/or invitees of the school, University, and/or other external locations operated, visited, and/or owned and/or operated by Defendants, Trustees of Princeton d/b/a Princeton University, Stevan Harnad, Defendant Doe 1-10, Defendant Doe Institution 1-10;

i.   Failure to implement and maintain proper and effective policies and procedures to prevent sexual abuse of and/or other abusive behavior toward minor children and/or invitees;

j.   Negligently maintaining custody, supervision and/or protection of minor children and/or invitees placed in their care by virtue of their authority and solicitation of minor children to participate in their University and/or activities;

k.  Failure to properly train professors, teachers, employees, agents, servants, representatives, and/or ostensible/aided agents to identify signs of sexual molestation or inappropriate sexually related behavior to minor children and/or invitees by fellow students, professors, teachers, employees, associates, and/or individuals within its control, oversight, supervision, and/or ostensible/aided control;

l.  Negligent reliance on persons who claimed they could treat sexual molesters and/or sexually abusive individuals;

m.  Negligent retention of and/or failure to terminate and/or expel Stevan Harnad, other Defendants, and/or other sexually inappropriate and/or abusive individuals from or associated with the Trustees of Princeton d/b/a Princeton University, promoting a culture and environment of complicity, denial and deception regarding sexual abuse within the University;

n.  Failure to exercise due care under the circumstances;

o.  Recklessly, negligently and/or carelessly failing to observe, manage, direct, oversee, and supervise the relationship between Plaintiff, N.S, and Stevan Harnad;

p.  Recklessly, negligently and/or carelessly failing to have proper and effective policies and procedures to require adequate observation, management, oversight, and/or supervision of the relationship between Plaintiff, N.S. and Stevan Harnad, and/or other Defendants;

q.  Recklessly, negligently and/or carelessly failing to recognize Stevan Harnad's conduct and behavior prior to the events in question and/or as described herein as creating a risk of sexual abuse toward minor children and/or invitees, including, but not limited to, N.S.;

r.  Failing to investigate complaints and/or reports, if any, from Proctors, faculty, students, employees, and/or administrators that Stevan Harnad was behaving inappropriately and/or harassing minor children and/or invitees inappropriately, including, but not limited to, N.S.;

s.  Recklessly, negligently and/or carelessly failing to identify Stevan Harnad as a sexual abuser;

t.  Recklessly, negligently and/or carelessly failing to investigate behavior of Stevan Harnad that put the Defendants on notice and/or should have placed Defendants on notice that Stevan Harnad was and/or might have been a potential molester and/or sexual predator;

u.  Recklessly, negligently and/or carelessly failing to identify Stevan Harnad as a potential molester and/or sexual predator;

v.   Negligence as may be proven from facts now exclusively in the possession of Defendants, which may be ascertained after the filing of the Complaint and Amended Complaints;

w.   Negligent hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of individuals in the employment and/or enrollment of the Trustees of Princeton d/b/a Princeton University;

x.   Failing to use due care in hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of Stevan Harnad and his respective relationship with Plaintiff, N.S.;

y.   Failing to investigate and supervise Stevan Harnad and his relationship with N.S.;

z.   Failing to conduct a thorough and proper background check of Stevan Harnad;

aa. Failing to thoroughly and reasonably investigate Stevan Harnad's sexual history;

bb. Failing to learn of or investigate Stevan Harnad's history of sexual impropriety with minor children and his proclivity to sexually abuse minor children;

cc. Failing to conduct a thorough and proper interview with Stevan Harnad;

dd. Failing to investigate whether Stevan Harnad had any inappropriate sexual interest in minor children and/or invitees;

ee. Failing to use due care in the selection of Stevan Harnad as professor and teacher, rendering educational instruction and interacting with minor children and/or invitees on campus;

ff.  Failing to use due care in the retention of Stevan Harnad as a professor, teacher, and/or providing service near minor children and/or invitees on campus;

gg. Recklessly, negligently and/or carelessly failing to adequately check Stevan Harnad's background, before enrollment and/or employment and/or entrustment with the University's classrooms and/or offices.

hh. Recklessly, negligently and/or carelessly failing to have policies and procedures in place to screen individuals for the possibility of being sexual predators.

136.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, were negligent under the facts as detailed within this Second

Amended Complaint in that these Defendants failed to use that degree of care, precaution and vigilance which a reasonably prudent person or entity would use under the same or similar circumstances, including, but not limited to, the negligent affirmative acts detailed in this Second Amended Complaint which a reasonably prudent person or entity would not have done, and also the negligent omission or failure to act and/or take precautions as detailed in this Complaint which a reasonably prudent person or entity would have done or taken under these circumstances.

137.    Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, are vicariously liable for the willful, wanton, or grossly negligent acts of its student and/or agent and/or ostensible agent and/or aided agent, Stevan Harnad.

**WHEREFORE,** Plaintiff, N.S., demands judgment against Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, jointly, severally, and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems just and equitable.

~~**THIRD COUNT – THE TRUSTEES OF PRINCETON UNIVERSITY, JOHN DOES 1-5, ABC ENTITY 1-5 – PROPERTY OWNER'S/BUSINESS'/CONTRACTOR'S DUTY TO PROTECT INVITEES/SOCIAL GUESTS AGAINST CRIMINAL ACTIVITY, INCLUDING CRIMES OF A SEXUAL NATURE, SEXUAL ABUSE AND/OR SEXUAL ASSAULT**~~

~~1. Plaintiff N.S. repeats and reiterates each and every allegation of the prior Counts as if fully set forth herein at length.~~

~~2. At all times mentioned herein, Defendant STEVAN HARNAD was employed by and/or was an agent working for the Defendant, the TRUSTEES OF PRINCETON UNIVERSITY, as a student teacher, teaching assistant, graduate assistant, research assistant, and/or student volunteer.~~

~~3.~~1.    In addition to the allegations in the prior Counts, the Defendant the ~~TRUSTEES OF PRINCETON UNIVERSITY, in its ownership, management, administration and operation of the~~

Defendant PRINCETON UNIVERSITY, the Defendants JOHN DOES 1-5 (Yet unidentified school safety personnel, campus safety department employees, proctors, police and administrators, and faculty who witnessed STEVAN HARNAD's crimes of a sexual nature and/or sexual abuse of Plaintiff while on the PRINCETON UNIVERSITY campus, and, the Defendants ABC ENTITY 1-5 (Yet unknown entities who provided safety, police and protections services at PRINCETON UNIVERSITY) were, or should have been, fully aware of Defendant STEVAN HARNAD's propensities for pedophilia, his inappropriate behavior towards minors openly on campus, his use of the campus facilities and offices to commit crimes of a sexual nature and his likelihood to commit sexual assaults, acts of sexual abuse, and, crimes of a sexual nature on such minor children. In fact, said Defendants' Campus Police and/or Proctors questioned the Plaintiff, N.S., on more than one occasion about the Defendant STEVAN HARNAD's relationship with the then-minor Plaintiff, and did nothing to intervene during his ongoing grooming and abuse of the Plaintiff.

4. At all times time aforesaid, the Defendant the TRUSTEES OF PRINCETON UNIVERSITY, in their ownership, management, administration and operation of PRINCETON UNIVERSITY, the Defendants JOHN DOES 1-5 (Yet unidentified school safety personnel, campus safety department employees, proctors, police and administrators, and faculty who witnessed STEVAN HARNAD's crimes of a sexual nature and/or sexual abuse of Plaintiff while on the PRINCETON UNIVERSITY campus, and, the Defendants ABC ENTITY 1-5 (Yet unknown entities who provided safety, police and protections services at PRINCETON UNIVERSITY) had a duty to intervene when they became aware of, or should have been aware of, his propensity for pedophilia, his inappropriate behavior towards minors openly on campus, his use of the campus facilities and offices to groom minor children and his likelihood to commit sexual assaults, acts of sexual abuse, and/or crimes of a sexual nature on such minor children.

5. The Defendant the TRUSTEES OF PRINCETON UNIVERSITY, in their ownership,

management, administration and operation of PRINCETON UNIVERSITY, the Defendants JANE and JOHN DOES 1-5 (Yet unidentified school safety personnel, campus safety department employees, proctors, police and administrators, and faculty who witnessed STEVAN HARNAD's crimes of a sexual nature and/or sexual abuse of Plaintiff while on the PRINCETON UNIVERSITY campus, or, who had a supervisory or oversight role over Defendant STEVAN HARNAD, and who failed to take necessary precautions to prevent such crimes and abuse of the then minor Plaintiff) and the Defendants ABC ENTITY 1-5 (Yet unknown entities who provided safety, police and protections services at PRINCETON UNIVERSITY) breached said duties as a direct result of which the Plaintiff, N.S., was caused to be physically and sexually assaulted by the Defendant, STEVAN HARNAD, sexually abused by him, and, was further caused to sustain severe and permanent emotional and psychological harm and distress.

6. The Defendant, the TRUSTEES OF PRINCETON UNIVERSITY, in their ownership, management, administration and operation of PRINCETON UNIVERSITY, the Defendants JANE and JOHN DOES 1-5 (Yet unidentified school safety personnel, campus safety department employees, proctors, police and administrators, and faculty who witnessed STEVAN HARNAD's crimes of a sexual nature and/or sexual abuse of Plaintiff while on the PRINCETON UNIVERSITY campus, and, the Defendants ABC ENTITY 1-5 (Yet unknown entities who provided safety, police and protections services at PRINCETON UNIVERSITY) further engaged in willful and wanton and grossly negligent conduct and omissions in its' breaches of the aforesaid duties that enabled Defendant, STEVAN HARNAD, to physically and sexually assault, and, sexually abuse the Plaintiff, and are therefore further directly responsible for the injuries, damages and losses suffered by the Plaintiff, N.S., herein.

7. Further, Defendant, the TRUSTEES OF PRINCETON UNIVERSITY, in their ownership, management, administration and operation of PRINCETON UNIVERSITY, the Defendants JOHN DOES 1-5 (Yet unidentified school safety personnel, campus safety

~~department employees, proctors, police and administrators, and faculty who witnessed STEVAN HARNAD's crimes of a sexual nature and/or sexual abuse of Plaintiff while on the PRINCETON UNIVERSITY campus, and who failed to take necessary precautions to prevent such crimes and abuse of the then minor Plaintiff) and the Defendants ABC ENTITY 1-5 (Yet unknown entities who provided safety, police and protections services at PRINCETON UNIVERSITY) further engaged in conduct that was intentional, willful, wanton, malicious, carried out with a willful disregard for the Plaintiff's health, safety, and well-being and was further grossly negligent, as a direct result of which Plaintiff, N.S., sustained the injuries, damages and losses set forth herein, the Plaintiff is also entitled to an award of Punitive Damages pursuant, to N.J.S.A. 2A:15-5.2 et seq. and N.J.A.C. 30:13-4.2, et seq.~~

~~WHEREFORE, Plaintiff N.S. demands judgment for compensatory and exemplary (punitive) damages against the Defendant TRUSTEES OF PRINCETON UNIVERSITY as owner, manager, administrator and operator of PRINCETON UNIVERSITY and the Defendants JOHN DOES 1-5 (Yet unidentified school safety personnel, campus safety department employees, proctors, police and administrators, and faculty who witnessed STEVAN HARNAD's crimes of a sexual nature and/or sexual abuse of Plaintiff while on the PRINCETON UNIVERSITY campus, and, the Defendants ABC ENTITY 1-5 (Yet unknown entities who provided safety, police and protections services at PRINCETON UNIVERSITY) on this Count, together with interest, fees and costs of suit.~~

### COUNT III – RESPONDEAT SUPERIOR

**Plaintiff, N.S.**
**v.**
**Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, and Defendant Doe Institution 1-10**

138.   Plaintiff repeats and reiterates each and every allegation of the prior Counts as if fully set forth herein at length.

139.    The perpetrator, Harnad, was an agent of the Defendant, Trustees of Princeton University, holding a position that allowed him to interact freely with minors on campus only steps away from his Psychology office. As such, the University bears responsibility for Harnad's actions, especially given that these actions occurred while an agent of the University and on premises belonging to the jurisdiction of the Trustees of Princeton.

~~109.~~140.    The perpetrator's, Harnad, actions were criminal and they were facilitated by his position as an agent of the University and the authority it conferred upon him. His interactions with Plaintiff occurred on University premises, during times when he was ostensibly fulfilling his role as an agent of the University. The Defendant's, Trustee of Princeton, failure to supervise or control Harnad's conduct further supports the application of respondeat superior liability.

141.    Defendants, Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, are liable for the actions of Harnad, as aforesaid, in accordance with the principles governing principal/agency relationships, in accordance with the doctrine of respondeat superior and/or otherwise in accordance with law.

**WHEREFORE,** Plaintiff, N.S., demands judgment against Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, jointly, severally, and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems just and equitable.

~~**FOURTH COUNT - THE TRUSTEES OF PRINCETON UNIVERSITY AND JAMES ROE 1-5 - SCHOOL/UNIVERSITY/BUSINESS'S/SUPERVISOR'S DUTY TO PROPERLY SUPERVISE AND OVERSEE EMPLOYEES, AGENTS OR VOLUNTEERS**~~

~~1.Plaintiff N.S. and reiterates each and every allegation of the previous counts as if set forth at length herein.~~

~~2. Defendants, the TRUSTEES OF PRINCETON UNIVERSITY and JAMES ROE 1-5 (a series of fictitious names representing yet unidentified school personnel and employees who~~

had a supervisory or oversight role over Defendant agent Harnad, and who failed to take necessary precautions to prevent such crimes and/or abuse of the then minor Plaintiff) had a duty to properly supervise Defendant Harnad and his activities on the University Campus.

3. Said Defendants the TRUSTEES OF PRINCETON UNIVERSITY and JAMES ROE 1-5 (a series of fictitious names representing yet unidentified school personnel and employees who had a supervisory or oversight role over Defendant agent Harnad, and who failed to take necessary precautions to prevent such crimes and/or abuse of the then minor Plaintiff) breached said duty, as a direct result of which the Plaintiff, N.S., was caused to be physically and sexually assaulted by the Defendant, STEVAN HARNAD, sexually abused by him, and, was further caused to sustain severe and permanent emotional and psychological harm and distress.

4. Said Defendants the TRUSTEES OF PRINCETON UNIVERSITY and JAMES ROE 1-5 (a series of fictitious names representing yet unidentified school personnel and employees who had a supervisory or oversight role over Defendant Harnad, and who failed to take necessary precautions to prevent such crimes and/or abuse of the then minor Plaintiff), in breaching the aforesaid duty, further engaged in willful and wanton and grossly negligent conduct and omissions in its' breaches that enabled Defendant, STEVAN HARNAD, to physically and sexually assault, and, sexually abuse the Plaintiff, and are therefore further directly responsible for the injuries, damages and losses suffered by the Plaintiff herein.

5. Said Defendants the TRUSTEES OF PRINCETON UNIVERSITY and JAMES ROE 1-5 (a series of fictitious names representing yet unidentified school personnel and employees who had a supervisory or oversight role over Defendant agent Harnad, and who failed to take necessary precautions to prevent such crimes and/or abuse of the then minor Plaintiff), further engaged in conduct that was intentional, willful, wanton, malicious, carried out with a willful disregard for the Plaintiff's health, safety, and well-being and was further grossly negligent, as a direct result of which Plaintiff, N.S., sustained the injuries, damages and losses set forth herein,

the Plaintiff is also entitled to an award of Punitive Damages pursuant, to N.J.S.A. 2A:15-5.2 et seq. and N.J.A.C. 30:13-4.2, et seq.

WHEREFORE, Plaintiff N.S. demands judgment for compensatory and exemplary (punitive) damages against the Defendants TRUSTEES OF PRINCETON UNIVERSITY and JAMES ROE 1-5 (a series of fictitious names representing yet unidentified school personnel and employees who had a supervisory or oversight role over Defendant agent Harnad, and who failed to take necessary precautions to prevent such crimes and/or abuse of the then minor Plaintiff), on this Count, together with interest, fees and costs of suit.

**FIFTH COUNT – STEVAN HARNAD and THE TRUSTEES OF PRINCETON UNIVERSITY – INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**COUNT IV – INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**Plaintiff, N.S.**
**v.**
**Stevan Harnad**

1.  Plaintiff N.S. and reiterates each and every allegation of the previous counts as if set forth at length herein.

142. Plaintiff repeats and reiterates each and every allegation of the prior Counts as if fully set forth herein at length.

143. Defendant, Stevan Harnad, also engaged in intentional, reckless and careless conduct so as to cause severe emotional distress to the Plaintiff, N.S., including assaulting her in front of her sister and other children, exposing her to the embarrassment of being the victim of crimes of a sexual nature and/or assaulted while on the Defendant, TRUSTEES OF PRINCETON UNIVERSITY's Princeton University's campus, which was commented on by employees and/or agents of the Defendant, TRUSTEES OF PRINCETON UNIVERSITY, physically and sexually assaulting and abusing Plaintiff, having her sit on his lap, hold hands with her, "hypnotizing her,"

and Defendant, STEVAN HARNAD's breaking and entering into her home, resulting in her ultimately screaming and his departure from the premises through a basement door. and, publishing an essay about his acts of pedophilia with Plaintiff.

144.    The actions of Defendant, Stevan Harnad, against Plaintiff were extreme and outrageous; with discriminatory behavior; so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and are regarded as atrocious and utterly intolerable in our civilized community.

144.145.    The actions of Defendant, Stevan Harnad, were the direct and/or proximate cause of emotional distress to the Plaintiff, which was so severe that no reasonable person could be expected to endure such distress.

145.146.    Further, as the Defendants, Stevan Harnad's, and the Defendant TRUSTEES OF PRINCETON UNIVERSITY's, conduct was intentional willful, wanton, malicious, carried out with a willful disregard for the Plaintiff's safety, health and well-being and was further grossly negligent, as a direct result of which Plaintiff, N.S., sustained the injuries, damages and losses set forth herein, the Plaintiff is also entitled to an award of Punitive Damages pursuant, to N.J.S.A. 2A:15-5.2 et seq. and N.J.A.C. 30:13-4.2, et seq.

146.    The Defendant the TRUSTEES OF PRINCETON UNIVERSITY, in its ownership, management, administration and operation of PRINCETON UNIVERSITY also engaged in intentional, reckless, and careless conduct so as to cause severe emotional distress to the Plaintiff, N.S., which conduct facilitated and enabled Defendant Harnad's behavior, conduct, physical and sexual assaults, crimes of a sexual nature and/or sexual abuse of the Plaintiff, N.S.

WHEREFORE Plaintiff demands judgment against Defendant, STEVAN HARNAD and the Defendant the TRUSTEES OF PRINCETON UNIVERSITY, individually, jointly and severally, for compensatory and exemplary (punitive) damages on this Count, together with interest, attorney's fees and costs of suit.

WHEREFORE, Plaintiff, N.S., demands judgment against Defendant, Stevan Harnad, jointly, severally, and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems just and equitable.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**Plaintiff, N.S.**
**v.**
**Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, and Defendant Doe Institution 1-10**

147.    Plaintiff repeats and reiterates each and every allegation of the prior Counts as if fully set forth herein at length.

148.    The Defendant, Trustees of Princeton, in its ownership, management, administration and operation of Princeton University, as a result of its open invitation and inducement to minors such as Plaintiff, N.S., to enter its premises had a duty to protect minor children.

149.    Prior to opening the campus to minor children, Defendant, Trustees of Princeton, knew and/or should have known that inviting minor children to a predominately adult male school where illicit drug use and criminal activities occurred would create a sexually hostile environment as set forth herein above.

150.    But for the Princeton University's invitation of minors to campus in June of 1970, Plaintiff, N.S., would not have been sexually targeted, groomed, and subjected to crimes of a sexual nature by Harnad.

151.    By allowing minors to be exposed to drugs, alcohol, and sexual predators, the University engaged in conduct that endangered the welfare of children. The University's reckless policies and failure to provide a safe environment facilitated the perpetrator, Harnad's ability to groom, intoxicate, drug, and sexually exploit Plaintiff, N.S.

152.    The Defendant, Trustees of Princeton University, in their ownership, management, administration and operation of Princeton University breached said duty to the Plaintiff, N.S., by failing to intervene and protect Plaintiff from the sexual abuse and/or sexual misconduct that continued on campus, for 18 months in plain sight.

153.    The actions and/or inactions of Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, jointly, severally, and/or through the conduct of Stevan Harnad, was the direct and/or proximate cause of emotional distress to the Plaintiff, which was so severe that no reasonable person could be expected to endure such distress.

WHEREFORE, Plaintiff, N.S., demands judgment against Defendants, Trustees of Princeton d/b/a Princeton University, Defendant Doe 1-10, Defendant Doe Institution 1-10, jointly, severally, and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems just and equitable.

### ~~FIRST COUNT  STEVAN HARNAD – CRIMES OF A SEXUAL NATURE, SEXUAL ABUSE, SEXUAL ASSAULT~~

### COUNT VI – CRIMES OF A SEXUAL NATURE, SEXUAL ABUSE, SEXUAL ASSAULT

**Plaintiff, N.S.**
**v.**
**Stevan Harnad**

154.    Plaintiff repeats and reiterates each and every allegation of the prior Counts as if fully set forth herein at length.

~~1.~~155.    From 1970 through 1972 and at all times mentioned herein, Plaintiff, N.S., then a minor, was a resident of Princeton, New Jersey.

~~2.~~156.    This Count against STEVAN HARNAD is brought pursuant to provisions of the New Jersey Child Victims Act ("CVA") (N.J.S.A 2A:14-2b) and the Child Sexual Abuse Act ("CSAA") (N.J.S.A. 2A:61B-1).

147.157.    More specifically, this action is brought pursuant to N.J.S.A. 2A:14-2(b)(a) which states, in pertinent part: an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1), that occurred prior to the effective date of P.L.2019, c.120 (C.2A:14-2a et al.), and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

148.158.    In 1970 through 1972, and at all times mentioned herein, Defendant STEVAN HARNAD, was a graduate student, teaching assistant, graduate assistant, research assistant and/or student volunteer employed or engaged by Defendant, THE TRUSTEES OF PRINCETON UNIVERSITY as owners, managers, administrators, and operators of Princeton University.

149.159.    From 1970 through 1972, while N.S. was a minor, Defendant, Stevan Harnad, while on campus of Princeton University, groomed N.S., in the course of his role as a professor, teacher, graduate student, graduate teaching assistant, graduate research assistant, employee, agent, servant, representative and/or ostensible/aided agent with an office and classroom access, and further willfully and wantonly engaged in the psychological manipulation of Plaintiff, physically assaulting her, "hypnotizing" her and other children, including her sister, engaging in seduction, sexually explicit discussions, intimate touching, sexual abuse, and/or crimes of a sexual nature. Many of these acts occurred in front of Nassau Hall, inside Defendant's, Stevan Harnad, office and classrooms in the Psychology Department, in front of the Fountain of Freedom, campus cafeterias, and campus walkways on the University campus.

6.160.    As a direct result of Defendant STEVAN HARNAD's willful and wanton conduct and actions described herein, the Plaintiff, N.S., was caused to be physically and sexually assaulted, sexually abused, and, was further caused to sustain severe and permanent emotional and

psychological distress and harm.

7.161. Further, as Defendant HARNAD's conduct was intentional, willful, wanton, malicious, carried out with a willful disregard for the Plaintiff's safety, health and well-being, as a direct result of which Plaintiff, N.S., sustained the injuries, damages and losses set forth herein, the Plaintiff is also entitled to an award of Punitive Damages pursuant, to N.J.S.A. 2A:15-5.2 et seq. and N.J.A.C. 30:13-4.2, et seq.

162.   As a direct and proximate result of the sexual assault, molestation, battery and restraint, Plaintiff, N.S., suffered and will continue to suffer severe, permanent and disabling injuries, physical and emotional pain, great difficulty in forming and maintaining close emotional relationships, overwhelming confusion, depression, shame, embarrassment, anxiety, dysfunction, wounded trust in the intentions of others, psychiatric disorders and physical manifestations of psychiatric disorders, learning disabilities and loss of religious faith, which require and will continue to require future counseling and psychological treatment and refrain from normal pursuits, vocation, and employment.

WHEREFORE, Plaintiff demands judgment for compensatory and exemplary (punitive) damages against Defendant STEVAN HARNAD on this Count together with interest, attorney's fees and costs of suit.

WHEREFORE, Plaintiff, N.S., demands judgment against Defendant, Stevan Harnad, jointly, severally, and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, attorney's fees, and such other relief as the Court deems just and equitable.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury as to all issues involved herein.

### DESIGNATION OF TRIAL COUNSEL

MICHAEL B. ZERRES, ESQ., ERIC KAHN, ESQ. has been designated as trial counsel in the above matter.

## CERTIFICATION

I hereby certify that this matter is not the subject of any other action pending in any Court or a pending Arbitration proceeding, nor is any other action or Arbitration proceeding contemplated, except as follows: one other action simultaneously filed herewith: <u>M.C. v. STEVAN HARNAD, et al.</u>, D.N.J. Docket No. 3:21-cv-19819. All parties known to Plaintiffs at this time who should have been joined in this action, have been joined.

~~BLUME, FORTE, FRIED, ZERRES & MOLINARI~~
~~Attorneys for Plaintiff(s)~~

~~/s/ Michael B. Zerres~~

~~By: _____~~
~~MICHAEL B. ZERRES, Esq.~~

~~DATED: April 14, 2023~~

**JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.**
**Attorneys for Plaintiff**

/s/ Eric Kahn
By: _____
Eric G. Kahn, Esq.

<u>Dated: September 12, 2024</u>
<u>Our File No.: 243472</u>