NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

N.S.,

    Plaintiff,

    v.

STEVAN HARNAD, *et al.*,

    Defendants.

Civil Action No. 21-19820 (RK) (JBD)

**OPINION**

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the February 4, 2025 Report and Recommendation of the Honorable J. Brendan Day, U.S.M.J. (ECF No. 62, "R&R.") The R&R recommends that the Court deny Plaintiff N.S.'s ("Plaintiff") Motion for Leave to File a Second Amended Complaint. (ECF No. 52.) Plaintiff was afforded fourteen (14) days to file any objections to the R&R, pursuant to 28 U.S.C. § 636(b)(1)(C), Federal Rule of Civil Procedure ("Rule") 72(b)(2), and Local Rule 72.1(c)(2) but did not file any such objections within the allotted time period or to date. Having reviewed the relevant documents and submissions, the Court adopts the R&R in its entirety. Accordingly, Plaintiff's Motion (ECF No. 52) is **DENIED,** and all claims against Defendant Trustees of Princeton University d/b/a/ Princeton University ("Princeton") are **DISMISSED WITH PREJUDICE.**[1]

---

[1] The Court's Order of June 28, 2024 dismissed all of Plaintiff's claims as to Princeton without prejudice. (ECF No. 48 at 20.) Now that Plaintiff has been denied the opportunity to amend her Complaint, the previous dismissal as to Princeton is with prejudice. The First Amended Complaint is now operative as to all claims that survived against Harnad.

I.  **BACKGROUND**

The facts of this case, which commenced in 2021, are familiar to the parties, and the Court therefore only reiterates what is necessary to resolve the pending R&R. Plaintiff N.S. alleges that between 1970 and 1972, when she was approximately fourteen years old, she was groomed and sexually assaulted by Defendant Stevan Harnad ("Harnad"). (*See, e.g.*, ECF No. 53, "SAC," ¶¶ 17, 25, 50, 68.) Plaintiff was a minor who lived in Princeton Township, New Jersey (*id.* ¶ 28), and met Harnad on the campus of Princeton University (*id.* ¶ 29), with which he was somehow affiliated—either as a graduate student, employee, or otherwise (*id.* ¶ 14). To be sure, the allegations of sexual molestation are reprehensible and revolting: including, but not limited to, digital and oral penetration, forcing the two minor sisters to witness each other's sexual abuse, and coercing them to obscure their sexual molestation from others. (*See id.* ¶¶ 68–76.)

According to Plaintiff, Harnad "groomed" her while physically on the Princeton University campus by holding her hands (*id.* ¶ 43), buying her snacks and meals (*id.* ¶ 45), playing "hypnosis games" with her (*id.* ¶ 64), sitting close to her (*id.*), and letting her sit on his lap (*id.*). Plaintiff further alleges that Harnad sexually assaulted her in his off-campus bedroom, and in her home. (*See, e.g., id.* ¶¶ 68, 74.) Plaintiff, who states she was a 14-year-old child at the time of the onset of sexual grooming, does not allege that she was a member of the Princeton University community, nor that she lived on campus at any time. (*See id.* ¶ 25.)

This marks Plaintiff's fourth complaint seeking redress for harms allegedly committed against her. On October 26, 2021, Plaintiff filed her first complaint in the Superior Court of New Jersey, Mercer County, against Harnad, Princeton, and multiple John Does, Jane Does, and ABC entities. (ECF No. 1.) Plaintiff filed a corrected complaint on November 2, 2021. (*Id.*) On January 6, 2022, Princeton filed its first Motion to Dismiss. (ECF No. 9.) The Honorable Georgette Castner,

U.S.D.J. granted Princeton's Motion in the nearly identical case brought by N.S.'s sister, M.C. *See M.C. v. Harnad, et al.*, No. 21-19819. Judge Castner directed N.S. to that opinion and granted Princeton's Motion in this case as well. (ECF No. 25.) Plaintiff subsequently filed her First Amended Complaint. (ECF No. 29, "FAC".) Princeton then filed its second Motion to Dismiss. (ECF No. 34.)[2] On June 28, 2024, this Court granted Princeton's Motion to Dismiss, holding, *inter alia*, that Plaintiff had not alleged sufficient facts to demonstrate that Princeton "should have foreseen Harnad's sexual assault of Plaintiff but failed to intervene." (ECF No. 48 at 10.)[3]

Thereafter, in light of the series of prior complaints and the two judicial opinions granting dismissal of same, the Court directed Plaintiff to file a Motion for Leave to File an Amended Complaint, pursuant to Rule 15(a). (ECF No. 51); *see also* Fed. R. Civ. P. 15(a)(2) (stating that after a party has exhausted its first amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave"). The Court noted that any amendment would be a "final chance to plead a valid claim." (ECF No. 51.)

Plaintiff filed her Motion for Leave to File a Second Amended Complaint on September 12, 2024. (ECF No. 52; ECF No. 53.) The putative SAC brings six causes of action: (1) Gross Negligence (against Princeton); (2) Negligent Hiring, Supervision, and/or Retention (against Princeton); (3) *Respondeat Superior* (against Princeton); (4) Intentional and Negligent Infliction of Emotional Distress (against Harnad); (5) Negligent Infliction of Emotion Distress (against Princeton); and (6) Crimes of a Sexual Nature, Sexual Abuse, and Sexual Assault, pursuant to the New Jersey Child Victims Act (N.J. Stat. Ann. 2A:14-2b) and Child Sexual Abuse Act (N. J. Stat. Ann. 2A:61B-1) (against Harnad). (*See* SAC at 20, 25, 31, 32, 33, 35.)

---

[2] On May 15, 2023, this case was reassigned to the Undersigned. (ECF No. 32.)
[3] The Court also denied Harnad's Motion to Dismiss, and Counts One and Five of the FAC survived as to Harnad only. (*Id.* at 6.)

Princeton opposed Plaintiff's Motion for Leave to Amend (ECF No. 54, "Def. Opp."), and Plaintiff replied (ECF No. 55, "Pl. Rep."). On February 4, 2025, Judge Day issued an R&R, recommending that the Court deny Plaintiff's Motion as futile, preclude her from filing the SAC, and "close[]" "the case against Princeton . . . with prejudice." (R&R at 41.) Pursuant to 28 U.S.C. § 636(b)(1)(C), Rule 72(b)(2), and Local Rule 72.1(c)(2), Plaintiff was afforded fourteen (14) days—until February 18, 2025, to file any opposition. (*See* ECF No. 62 ("Objections, if any, to R&R due by 2/18/2025.").) No such opposition was filed to date, and the Court accordingly treats the R&R as unopposed.

## II.   LEGAL STANDARD

After a magistrate judge issues an R&R a dispositive issue, a party may object to the R&R within fourteen (14) days of service. 28 U.S.C. § 686(b)(1)(C); Fed. R. Civ. P. 72(b)(2); Local Civ. R. 72.1(c)(2). When an R&R is uncontested, the district court is not required to apply a particular standard of review. *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under *de novo* or any other standard, when neither party objects to those findings."); *see also Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984). "Even absent objections to the report and recommendation," however, a district court should give "reasoned consideration" to the "dispositive legal issues raised by the report." *Equal Emp. Opportunity Comm'n v. Long Branch*, 866 F.3d 93, 99–100 (3d Cir. 2017) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)); *see also* Fed R. Civ. P. 72, Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation.") District courts, therefore, apply a "clear error" standard. *See Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006). "In order to satisfy this deferential standard, the error must have been 'clear' or

'obvious' and seriously affect the fairness or integrity of the judicial proceedings." *Id.* (citing *United States v. Sargeant*, 171 F. App'x 954, 957 n.4 (3d Cir. 2006)).

Rule 15(a)(2) allows a party to amend its pleading "only with the opposing party's written consent or the court's leave." Fed R. Civ. P. 15(a)(2). Leave to amend should only be denied where it is apparent from the record that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Additionally, "a District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Id.* (citing *Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002)).

"Futility," in the context of a motion under Rule 15(a)(2), "is governed by the same standard as a [Rule 12(b)(6)] motion to dismiss." *Brown v. Camden City Sch. Dist.*, No. 19-114, 2020 WL 6055070, at *2 (D.N.J. Oct. 13, 2020); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("[I]f a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."). Accordingly, to withstand a futility determination, an amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. DISCUSSION

The current procedural posture of this case—wherein Judge Day has filed his R&R with no opposition—requires the Court to "defer to the Magistrate Judge's rulings" absent some "clear"

or "obvious" error. *See Bell v. Stop & Shop Supermarkets*, 18-13, 2020 WL 6140545, at *1 (D.V.I. Oct. 19, 2020) (citing *Sargeant*, 171 F. App'x at 957 n.4). The Court finds no errors—let alone "clear" or "obvious" ones—in Judge Day's careful review of Plaintiff's SAC and his conclusion that Plaintiff has not cured any of the deficiencies previously indicated by the Court. (*See* R&R at 41.) Since the claims against Harnad already survived a previous Motion to Dismiss (*see* ECF No. 48), Judge Day analyzed each of the four claims asserted against Princeton in the SAC, and found that, for reasons nearly identical to those set forth in the Court's prior Opinion, Plaintiff fails to allege facts—as opposed to conclusions—that the risk of harm to Plaintiff was foreseeable to Princeton. For the sake of completeness, the Court briefly addresses each count of the SAC alleged against Princeton, appropriately deferring to Judge Day's determinations.

### A. GROSS NEGLIGENCE (COUNT ONE)

In dismissing Plaintiff's FAC in part, the Court previously explained that Plaintiff could only bring a claim for gross negligence—not "simple negligence" because New Jersey's Charitable Immunity Act ("CIA") bars simple negligence claims against nonprofits organized for educational purpose. (*See* ECF No. 48 at 9); *see also K.L. v. Rutgers, State Univ of New Jersey*, No. 21-1508, 2022 WL 2207830, at *2 (3d Cir. 2022). Plaintiff therefore attempts to assert a claim of gross negligence in her SAC. (SAC ¶¶ 101–27.) This attempt is unsuccessful, as Judge Day indicates, because Plaintiff has not sufficiently alleged that Princeton owed a duty to Plaintiff.

To state a claim for gross negligence, the first step is to establish that the defendant owed a duty of care to the plaintiff, which "is a question of law that must be decided by the court." *Sander v. HR Tr. Servs.*, No. 08-1383, 2009 WL 3055368, at *2 (D.N.J. Sept. 21, 2009) (cleaned up). "Foreseeable risk is the indispensable cornerstone of any formulation of a duty of care. While foreseeability alone does not create a duty, there can be no duty unless harm to another is

reasonably foreseeable." *Doe ex rel. Doe v. Small*, 654 F. Supp. 3d 376, 395–96 (D.N.J. 2023) (cleaned up) (quoting *Dunphy v. Gregor*, 642 A.2d 372, 376 (N.J. 1994) and *J.S. v. R.T.H.*, 693 A.2d 1191, 1193 (N.J. Ct. App. Div. 1997), *aff'd* 742 A.2d 924 (N.J. 1998)).

Since foreseeability is the "indispensable cornerstone" of duty of care, any claim for gross negligence that Plaintiff asserts here must sufficiently allege foreseeability. *See id.* Plaintiff ostensibly advances two foreseeability arguments, each of which Judge Day rejected in turn. *First*, Plaintiff alleges that Harnad groomed her "in plain sight" on Princeton's campus, and therefore it was reasonably foreseeable to Princeton employees (and, by extension, Princeton itself), that she would be harmed. (Pl. Rep. at 6.) *Second*, Plaintiff alleges that Princeton knew its campus was unsafe for minors both before and after its adoption of the "Open Campus" policy. (*See* R&R at 13.)

Judge Day correctly concluded that Plaintiff's allegations of public acts of "grooming" on Princeton's campus does not establish foreseeability. Since the Court had already dismissed Plaintiff's claims in the FAC on foreseeability grounds (*see* ECF No. 48 at 10–11), Judge Day analyzed a series of new allegations averred in the proposed SAC that attempt to establish Harnad's behavior of grooming Plaintiff "in plain sight." (R&R at 16–17.) Plaintiff alleges that Harnad offered her drugs and alcohol while on campus (SAC ¶ 35); "brazenly walked" with Plaintiff "to the campus classroom . . . to engage in sexual harassment/misconduct/grooming" (*id.* ¶ 41); held hands with Plaintiff in front of University "Proctors," (*id.* ¶ 43); "openly and consistently" took photos of Plaintiff (*id.* ¶ 44); let Plaintiff sit on his lap and close to him (*id.* ¶ 64); "display[ed] affection," sat, talked, and walked with Plaintiff (*id.* ¶ 87); and "openly preferred the company" of Plaintiff "over adults while on campus" (*id.* ¶ 47). Plaintiff also continues to rely on her allegation that "Proctors" "questioned the Plaintiff . . . on many occasions if [Harnad] was her so-called

'boyfriend.'" (*Id.* ¶ 82). These additional allegations do not fare any better than those in the FAC at establishing foreseeability. As Judge Day explained, Plaintiff does not allege whether she or anyone else responded to the Proctors' questions about whether Harnad was her boyfriend, whether she reported Harnad's conduct to anyone, whether anyone knew how old she was, whether anyone would have recognized Harnad's affiliation with the University, or whether anyone would have even identified Harnad's conduct as "grooming" behavior. (R&R at 17–18); *see also G.A.-H v. K.G.G.*, 210 A.3d 907, 917 (N.J. 2019) (finding defendant had no knowledge that plaintiff was a minor because it is "difficult to know someone's age based on appearance alone").

Plaintiff's second theory of foreseeability, that Princeton's adoption of an "Open Campus" policy made her sexual assault foreseeable, is equally unavailing. The thrust of Plaintiff's argument is that the "Open Campus" policy, which allowed members of the public onto Princeton's property, invited a series of criminal activities that put Princeton on notice of more crime, including Plaintiff's sexual assault. (*See* Pl. Rep. at 5.) Plaintiff advanced this same theory in her FAC, relying on *Clohesy v. Food Circus Supermarkets, Inc.*, a case where the New Jersey Supreme Court assigned a duty of care to protect invitees from foreseeable criminal activity, because the town police had recorded around 60 criminal incidents either on or near the defendant's premises in the prior two-and-a-half years. 694 A.2d 1017, 1028–1030 (N.J. 1997). The Court previously rejected Plaintiff's analogy to *Clohesy* because an "unrelated spree of criminal incidences—involving property crimes and other non-sexual violence—on Princeton's campus do not establish the [University's] constructive knowledge of sexual assault, and thus does not make Harnad's criminal acts foreseeable." (ECF No. 48 at 14.)

To attempt to cure the deficiency, Plaintiff included allegations of additional "criminal incidences," that she hoped would more clearly analogize the present case to *Clohesy*. (*See* SAC

¶¶ 103–10.) Judge Day concluded—and the Court agrees—that each of these new allegations is either irrelevant or insufficient "in number, frequency, or degree to support an inference that it was foreseeable to Princeton, based on prior criminal incidents on campus, that [Plaintiff] was at risk of being groomed on campus and later sexually assaulted by Harnad off campus." (R&R at 25.) Three of the newly identified incidents happened *after* the timeframe at issue, and one occurred "in 1972," toward the end of the timeframe at issue. (SAC ¶ 111.) As Judge Day observed, "[t]hat leaves only four remaining factual allegations over the course of four years . . . a far cry from the situation in *Clohesy*, on which [Plaintiff] relies." (R&R at 24.)[4]

The Court finds no error in Judge Day's analysis or conclusion; Plaintiff has plainly failed to allege that her sexual assault was foreseeable to Princeton. She has established neither that Princeton knew or had constructive knowledge that she was being groomed in plain sight, nor that Princeton was on sufficient notice of criminal activity as a result of the few crimes that occurred around the time the "Open Campus" policy was adopted. Accordingly, the Court adopts Judge Day's R&R to deny Plaintiff's Motion as to Count One.

### B. Negligent Hiring, Supervision, and Retention (Count Two)

Plaintiff's failure to sufficiently allege foreseeability also requires dismissal of her claim for negligent hiring, supervision, and retention. To state a claim for negligent hiring or retention, a plaintiff must allege that "(1) the employer 'knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons' and (2) 'that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or

---

[4] In contrast, *Clohesy* cited some "60 criminal incidents either on or near the [subject] premises" during the time period "that preceded the victim's kidnapping and murder." (R&R at 25 (citing *Clohesy*, 694 A.2d at 1027).)

9

dangerous characteristics proximately caused the injury.'" *G.A.-H.*, 210 A.3d at 916 (quoting *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982)). In a negligent hiring or retention claim, "timing is important." *Moretz v. Trs. Of Princeton*, No. 21-19822, 2023 WL 9017155, at *3 (D.N.J. Dec. 29, 2023). "The employee's incompetence, unfitness, or dangerous attribute must be known to the employer *before* the employee takes the action which causes a plaintiffs injury." *Id.* A negligent supervision claim requires the Plaintiff to prove that "(1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materialize[d] and cause[d] the plaintiff's damages." *G.A.-H.*, 210 A.3d at 916 (citing *Di Cosola*, 450 A.2d at 515).

The Court rejected Plaintiff's claims for negligent supervision in her FAC (ECF No. 48 at 16), and, for the same reasons addressed above, her attempts here to cure the deficiencies are futile. Judge Day concluded, echoing his analysis as to Plaintiff's gross negligence claim, that Plaintiff did not sufficiently allege that Princeton knew of any of Harnad's alleged "dangerous attribute[s]" before he committed the alleged harm. (R&R at 34.) Despite Plaintiff's contentions that "proctors" were "keenly aware of the visible grooming of a sexual nature" because they asked if Harnad was her boyfriend (Pl. Rep. at 8 (citing SAC ¶ 82)), this single fact does not show that Princeton knew or should have known that Harnad posed a risk to Plaintiff. *See K.G. v. Owl City*, No. 17-8118, 2018 WL 6705679, at *5 (D.N.J. Dec. 20, 2018) (dismissing a claim for negligent hiring, retention, and supervision because, *inter alia*, there were "no allegations that [defendant] had a history of criminal activity or inappropriate contacts with minors" or that defendant was known within the community as having a "reputation for sexual aggression toward minors"). Accordingly, the Court adopts Judge Day's recommendation to deny Plaintiff's Motion as to Count Two.

10

### C. *Respondeat Superior* (Count Three)

For the first time in her SAC, Plaintiff attempts to state a claim for "*respondeat superior.*" (SAC ¶¶ 31–32.) This claim suffers from a principal deficiency: *respondeat superior* is not a standalone cause of action; it is only a "legal doctrine under which a court may impose vicarious liability on the employer of a person who has committed some independent tort." *Williams v. Verizon New Jersey, Inc.*, No. 19-9350, 2020 WL 1227663, at *11 (D.N.J. Mar. 12, 2020) (citing *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003)) ("*Respondeat superior* is not properly understood as a cause of action in its own right."). Because *respondeat superior* is alleged as a standalone claim that is not attached to any particular tort, this amendment to the complaint is futile on its face.[5]

Accordingly, the Court adopts Judge Day's recommendation to deny Plaintiff's Motion as to Count Three.

### D. Negligent Infliction of Emotional Distress (Count Five)

Plaintiff's final claim as to Princeton is Negligent Infliction of Emotional Distress ("NIED"). This count, like all the others, turns on foreseeability. "Recovery for negligent infliction of emotional harm requires that it must be *reasonably foreseeable* that the tortious conduct will cause genuine and substantial emotional distress or mental harm to average persons." *Cole v. Laughery Funeral Home*, 869 A.2d 457, 465 (N.J. Super. Ct. App. Div. 2005) (emphasis added). For the same reasons stated above, Plaintiff has failed to allege that Harnad's tortious conduct was reasonably foreseeable to Princeton.

---

[5] Judge Day concluded—and the Court agrees—that even assuming *arguendo* that Harnad was an employee of Princeton, "the SAC alleges no facts permitting a plausible inference that interacting with, sexually grooming, and sexually assaulting non-student minors were actions 'of a kind [that Harnad was] employed to perform.'" (R&R at 38 (citing *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 622 (D.N.J. 2012))). The SAC does not support an inference that Princeton could be vicariously liable for Harnad's actions.

11

The Court previously dismissed Plaintiff's claims for NIED in her FAC, concluding that the claim "fails as to [Princeton] for the same reasons as Plaintiff's premises liability claims do." (ECF No. 48 at 17.) In an attempt to cure her deficient pleading, Plaintiff now alleges that Princeton "knew or should have known" that allowing minors onto a "predominantly male" college campus with illicit drug use and criminal activity would create the kind of "sexually hostile environment" that ultimately led to Plaintiff's alleged assault. (SAC ¶¶ 149–151.) These allegations are conclusory and contain no factual assertion or causal connection between allowing minors onto campus and Plaintiff's assault. As Judge Day concluded, "the SAC has added no non-conclusory factual allegations that would be sufficient to alter the Court's earlier analysis dismissing [Plaintiff']s claim for negligent infliction of emotional distress." (R&R at 41.) The Court agrees. Accordingly, the Court adopts Judge Day's recommendation to deny Plaintiff's Motion as to Count Five.

In sum, Judge Day's R&R bespeaks a close and careful analysis of the proposed Second Amended Complaint, the parties' arguments, and the governing law. The Court does not find error in Judge Day's conclusions, let alone "clear," or "obvious" error which might "seriously affect the fairness or integrity of the judicial proceedings." *See Tice*, 425 F. Supp. 2d at 680.

## **CONCLUSION**

For the foregoing reasons, Judge Day's R&R (ECF No. 62) is **ADOPTED** in full. Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 52) is **DENIED.** All claims as to Defendant Princeton are **DISMISSED WITH PREJUDICE.** An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: February 25, 2025